[Cite as *MK&K Realty, Inc. v. Worthington City Council*, 2013-Ohio-5400.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| MK&K Realty, Inc., | : | |
| Appellant-Appellant, | : | |
| v. | : | No. 13AP-375 |
| | | (C.P.C. No. 12CV-12692) |
| Worthington City Council, | : | |
| | | (REGULAR CALENDAR) |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on December 5, 2013

*Plank Law Firm, LPA*, and *David Watkins*, for appellant.

*BakerHostetler, Daniel J. Guttman* and *Robert J. Tucker*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} MK&K Realty, Inc. ("MK&K") is appealing from the decision of the Franklin County Court of Common Pleas which in turn affirmed the decision of the Worthington City Council blocking MK&K from modifying plans for the development of two lots in Worthington, Ohio. MK&K assigns two errors for our consideration:

> ASSIGNMENT OF ERROR I: THE TRIAL COURT ERRED BY AFFIRMING THE DECISION OF CITY COUNCIL, WHEN THE DECISION ACTED AS AN UNCONSTITUTIONAL DEPRIVATION OF MK&K'S PROPERTY RIGHTS.
>
> ASSIGNMENT OF ERROR II: THE TRIAL COURT ERRED BY AFFIRMING THE DECISION OF CITY COUNCIL, WHEN THE CITY COUNCIL FAILED TO FOLLOW THE LAW AS

SET FORTH IN THE CODIFIED ORDINANCES OF WORTHINGTON, OHIO.

{¶ 2} In 2007, the Worthington City Council approved plans to allow CVS Pharmacy ("CVS") to build a new store and to erect two other buildings. CVS erected the building that was to be its new store, but never constructed the two other buildings.

{¶ 3} MK&K reacquired the rights to erect the two additional buildings, but did not want to build them in the manner originally planned. Specifically, MK&K did not wish for the two new buildings to contain residential space on the upper floor. Instead, MK&K wished for the buildings to be used solely for commercial purposes.

{¶ 4} MK&K's new plans for the buildings were submitted to the Worthington Architectural Review Board, which approved the plans with only minor modifications.

{¶ 5} The next step for the plans was the Worthington Planning Commission, which submitted the plans to the Worthington City Council for approval.

{¶ 6} The plans were submitted to the Worthington City Council, which refused to adopt a resolution granting the modifications.

{¶ 7} MK&K then pursued an appeal under the authority of R.C. 2506.01. The Franklin County Court of Common Pleas affirmed the decision of the Worthington City Council.

### Standard of Review

{¶ 8} R.C. 2506.04 controls the scope of review for the court of common pleas. In such an appeal, the common pleas court considers the whole record, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable or unsupported by the preponderance of substantial, reliable, and probative evidence.

{¶ 9} This court's standard of review is more limited than that of the court of common pleas. We review the judgment of the common pleas court on questions of law. An abuse of discretion is within the ambit of questions of law within the meaning of R.C.2506.04. *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 148 (2000).

{¶ 10} On appeal to this court, MK&K contends that the decision of the Worthington City Council mandated that the property be put to a particular use, namely

residential use on the second floors of the two buildings. MK&K claims that the decision constituted an unpermitted taking in violation of the constitutions of Ohio and the United States. MK&K argued that its plans for building were permitted and lawful as part of a C-2 District without the residential units. MK&K further argued that it would be economically unfeasible to construct the residential units, and therefore the City of Worthington deprived MK&K of all economically viable uses of the property.

{¶ 11} The Supreme Court of Ohio has stated that those government actions that cause an owner to suffer a permanent physical invasion of property, and government regulations that completely deprive an owner of all economically beneficial uses of the property, are per se takings for Fifth Amendment purposes. *State ex rel. Shelly Materials, Inc. v. Clark Cty Bd. of Commrs.*, 115 Ohio St.3d 337, 341, 2007-Ohio-5022, ¶ 18, 20. In *Shelly*, Shelly Materials purchased a 306-acre tract of land to mine sand and gravel deposits below the surface. The property was zoned A-1 as an agricultural district. Resource and mineral extraction was an allowed conditional use in an A-1 Agricultural District provided that the county board of zoning appeals approved the application for a permit as a conditional use. Shelly had purchased the property with the knowledge that a conditional use permit was required to mine sand and gravel. An examination of the property as a whole showed that when the permit application was denied, not all economically beneficial use was lost, and therefore, no compensable taking occurred.

{¶ 12} We are unable to see how Worthington City Council's decision to refuse to change the restrictions on the development violated MK&K's property rights. The flaw in MK&K's argument is that the restriction was there when MK&K reacquired the rights to develop the lots. The Worthington City Council was under no duty to change the requirements for the development of the lots to accommodate MK&K's ideas for what constituted a better development of the lots.

{¶ 13} MK&K knew about the restrictions and the requirement for residential space in the new buildings. The "bundle of rights" that MK&K reacquired from CVS did not include the right to develop the lots without any residential housing. MK&K acquired the right to develop the parcel subject to the same restrictions that were on the property when CVS held the rights. Having failed to show that it had a legally cognizable interest in the property without residential housing, there could not have been a taking of that

property interest. Worthington City Council did not engage in the taking of any property rights when it left the property right acquired by MK&K in place. The Worthington City Council could not deprive MK&K of a right it never had. MK&K was deprived of nothing except its hopes for a more profitable development of the land left vacant after the CVS store was built and occupied.

{¶ 14} The first assignment of error is overruled.

{¶ 15} In its second assignment of error, MK&K argues that the Worthington City Council did not abide by its own city ordinances when it did not allow MK&K to change the plans for the development of the vacant land. Specifically, MK&K argues that the Worthington City Council could not legally disapprove the decision of the Worthington Municipal Planning Commission. The Worthington City Council responds that the Worthington Planning Commission recommended approval to the Worthington City Council, but did not literally approve the resolution itself. The Worthington City Council also responded with a detailed discussion of the history of the development of the two lots, with the requirement for residential space being permanently fractured.

{¶ 16} Section 1175.01(f)(1) of the code provides in pertinent part:

> After the final development plan has been approved by [City] Council, a request for the change, adjustment, or rearrangement of buildings, parking areas, entrances, heights, or yards shall be submitted to the Clerk of the Municipal Planning Commission for a determination as to whether a review of such change, adjustment, or rearrangement by the Planning Commission is required. If the proposed amendment otherwise complies with this Planning and Zoning Code, contains changes that do not conflict with the standards established by the final development plan, and maintains the character and integrity of the original development, then such an amendment may be approved by the Clerk of the Planning Commission without further review.

MK&K sought to avail itself of the above written passage.

{¶ 17} Section 1175.01(f)(3) goes on to state:
> The Planning Commission may disapprove such proposed amendment, but may recommend a further review by Council for any reason, in which case a report and recommendation shall be forwarded to Council. Council shall hold a public hearing on the proposed amendment, and, if thereafter,

Council determines such proposed amendment substantially conforms to the standards established in the final development plan and complies with this Planning and Zoning Code, such amendment may be authorized by Council, by resolution or ordinance.

(4) The Planning Commission may:

A. Disapprove such proposed amendment with no further review by Council; or

B. Approve such proposed amendment with no further review by Council if it determines that the amendment substantially conforms to the standards established by the final development plan and complies with this Planning and Zoning Code.

{¶ 18} MK&K argues that under this provision the Planning Commission can do only one of three things: 1) disapprove the proposed amendment, but recommend further review by City Council; 2) disapprove the proposed amendment with no further review by City Council; or 3) approve the proposed amendment with no further review by Council. MK&K contends that the section of the code does not permit the Planning Commission to send an approved amendment to a final development plan to City Council to approve or disapprove.

{¶ 19} MK&K argues that Worthington's code does not provide the Planning Commission with the option of approving a proposed amendment to a development plan and then sending it to City Council for review. However, MK&K never raised the argument before City Council and thus waived the argument.

{¶ 20} Regardless of whether the issue was waived, we find no legal flaw in the process used in Worthington. The Worthington Metropolitan Planning Commission clearly knew that the modification requested by MK&K would generate significant public discussion and felt that the Worthington City Council was the preferable group to conduct the proceedings. The development coordinator for the City of Worthington stated at the hearing, all amendments to development plans can be approved either by the Planning Commission or go before Council. Typically, if it is a major development or a situation involving variances, it is sent to Council.

{¶ 21} Here, the Planning Commission believed approval was warranted, but it stopped short of approving the plan, instead sending the proposal to City Council for a full hearing.  In all likelihood, this was because of the long and contentious history of the plots and the expressed interest of the Council in having residential space downtown.

{¶ 22} We find no restriction in the Worthington City Code to prevent the Metropolitan Planning Commission from deferring to the City Council.

{¶ 23} The second assignment of error is overruled.

{¶ 24} Both assignments of error having been overruled, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT, P.J., and T. BRYANT, J., concurs.

T. BRYANT, J., retired, of the Third Appellate District, assigned to active duty under the authority of Ohio Constitution, Article IV, Section 6(C).

———————

KLATT, P.J., concurring.

{¶ 25} I agree with the majority decision.  I write separately to emphasize two points:  (1) there is no unconstitutional taking in this case because the Worthington City Council did not deprive MK&K of all economic value of the subject real property; and (2) MK&K's deletion of the residential units from the final development plan constituted a substantial change in that plan, which required Worthington City Council's approval. Therefore, there was no procedural error when the planning commission referred the issue to the Worthington City Council for consideration.  For these specific reasons, I agree with the majority's decision to affirm the judgment of the trial court.